# EXHIBIT A

Docusign Envelope ID: 9E0AEA9F-CB97-4636-B5A1-288C3F92D3ED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re: Children's National Subpoena No. 25-1431-028 | Case No.: _____ |

**<u>DECLARATION OF DR. NATHAN KUPPERMANN</u>**

I, Nathan Kuppermann, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and attest to the information set forth below through personal knowledge.

**A. <u>Personal Background</u>**

2. I am the Executive Vice President and Chief Academic Officer at Children's National Hospital ("CNH"). I have served in this role since September 2024.

3. I also serve as Chair of the Department of Pediatrics and Associate Dean of Pediatric Academic Affairs at the George Washington University School of Medicine and Health Sciences ("GWU School of Medicine"). I have served in this role since September 2024.

4. I am a board-certified pediatric emergency medicine physician, clinical epidemiologist and leader in emergency medical services for children. I have practiced medicine for more than 40 years. I received my medical degree from University of California San Francisco in 1985, completed my residency at Harbor-UCLA Medical Center, and completed my fellowship training in pediatric emergency medicine at Boston Children's Hospital and Harvard Medical School.

5. In my leadership roles at CNH and GWU School of Medicine, I oversee research, education and innovation for the CNH Research Institute, as well as academic and administrative leadership in the Department of Pediatrics at GWU School of Medicine. As Chair of the

1

Docusign Envelope ID: 9E0AEA9F-CB97-4636-B5A1-288C3F92D3ED

Department of Pediatrics, I oversee all medical training for residents and fellows in pediatrics.

6. Through my leadership roles at CNH and GWU School of Medicine, and discussions with CNH personnel and providers, I am familiar with how care is delivered across the hospital, the type of care services provided through the hospital, and the hospital's administrative and operational functions.

## B.  **Children's National Hospital**

7. CNH is a non-profit pediatric healthcare institution and a leading provider of pediatric services in the Washington, D.C. area, with clinical facilities located across Maryland, Washington, D.C., and Virginia.

8. CNH is committed to providing high-quality, evidence-based pediatric care for all patients and families, and improving health outcomes for children regionally, nationally, and internationally.

## C.  **CNH's Gender Care Services**

9. CNH has provided care to hundreds of children and adolescents through its Gender Development Program (the "Program") for the last 20 years.

10. The Program employed a multidisciplinary team of healthcare professionals who together have provided comprehensive, evidence-based care to patients in a safe environment allowing gender diverse patients and their families to ask questions, gather information, and access evidence-based healthcare in a confidential setting.

11. Gender-affirming care refers to the broad delivery of healthcare services to help align a patient with their gender identity. This form of care may include a range of social,

psychological, behavioral, and medical services. Not all the patients that sought care through the Program received pharmacological treatment.

**D. The Subpoena and Its Impact on Patients, Providers, and CNH**

12. The Subpoena had a significant impact on CNH's patients, families, and the Program as a whole. The records requested by the Subpoena encompass the most intimate and private dimensions of these patients and their families' lives. The records at issue may contain deeply personal information about patients' gender identity, developmental history, sexual history, family history, mental health, and physical health.

13. Patients and families contacted CNH about the Subpoena to express significant concern regarding the confidentiality of their medical records and the potential consequences of disclosure to federal investigators and prosecutors.

14. Based on my years of experience in medical leadership roles and providing clinical care, were CNH forced to turn over patient records pursuant to the Subpoena, patients and their families would likely perceive the disclosure as a grave breach of their privacy as well as a fundamental betrayal of the confidence and trust they placed in CNH and its providers, and they would likely hesitate or decline to seek any care at CNH, including the care provided through the Program. Patients and families who have sought or would seek care in other specialties unrelated to the Program would also likely hesitate or decline to seek care at CNH.

15. Such a breach of confidence and trust could be detrimental to the psychological health of the affected children and adolescents—possibly exacerbating existing mental health conditions and/or potentially triggering the onset of new mental health symptoms,

3

particularly for those whose gender identity has not been shared with family, friends, classmates, teachers, colleagues, or others.

16. If records are produced pursuant to the Subpoena, the consequences could be equally devastating, emotionally and psychologically, for the families of patients and potentially third parties.

17. The harm threatened by the Subpoena and compelled disclosure extends well beyond the hundreds of patients whose records are directly implicated. Sensitive information contained in Patient Records also extends to family members and third parties; patients regularly disclose sensitive information relating to their parents, friends, siblings, teachers, and others who are discussed during medical assessments.

18. Disclosure would also likely have a chilling effect on families' willingness to seek care at CNH, due to fear their sensitive information would later be subject to disclosure. Patients may become guarded in their clinical communications to healthcare providers, withholding information that may be essential to accurately diagnose and explore effective treatment options. Compelled production of sensitive information would likely harm the physician-patient relationship, resulting in diminished trust in the confidentiality of the physician-patient relationship.

19. The erosion of trust may not be limited to only the population of patients identified in the Subpoena. The trust of the broader patient population and their families in CNH could deteriorate significantly as well. Patients and families seeking care for other sensitive conditions, such as but not limited to mental health, substance abuse, sexually transmitted diseases, or reproductive health concerns, may be reluctant to seek care in fear their information may be required to be disclosed without their knowledge or consent.

Docusign Envelope ID: 9E0AEA9F-CB97-4636-B5A1-288C3F92D3ED

20. The Subpoena has also harmed CNH providers and the entire institution by creating an environment where providers are fearful of being targeted by the government for delivering evidence-based care.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and was executed on May 8, 2026.

Signed by:

DR. NATHAN KUPPERMANN

53DC7690BFBC463...

5/8/2026

Dr. Nathan Kuppermann

Date